UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MICHAEL J. KNEITEL,

                Plaintiff,

        -against-

RAYMOND SILVERY, ANTHONY PARILLA,
DIANE ARIANO, and MARISOLL GOMEZ,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CV-6811 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

On November 30, 2015, pro se Plaintiff Michael J. Kneitel initiated the instant civil rights action relating to the termination of his employment by the Metropolitan Transportation Authority ("MTA") and his subsequent attempts to obtain employment with that agency. (Compl. (Dkt. 1).) Before the court is Defendants' motion to dismiss the complaint. (Mot. to Dismiss ("Mot.") (Dkt. 26).) For the reasons stated below, the motion is GRANTED.

**I. BACKGROUND**

The following facts are drawn from the complaint, and are presumed to be true for the purposes of this motion. The court previously detailed the allegations in the complaint in connection with Plaintiff's motion to proceed in forma pauperis (Aug. 31, 2016, Mem. & Order (Dkt. 5)), and recites only those allegations that are relevant to the present motion to dismiss.[1]

---

[1] In the order granting Plaintiff's motion to proceed in forma pauperis, the court dismissed certain named defendants sua sponte. (Aug. 31, 2016, Mem. & Order.) The court does not include allegations against the dismissed parties in this order.

1

A.  **Factual Background**

   1.  Removal from the MTA

Plaintiff is a 53-year-old white male. (Compl. at 4.) He alleges that he was employed by the MTA from August 2010 until March 2011. (Id.)

On or about January 9, 2011, Plaintiff states that he informed his superiors at the MTA that he was unable to report to work due to a work-related injury. (Id. at 5.) Plaintiff received treatment for that injury until February 15, 2011, during which time he was not paid either his salary or workers' compensation. (Id.)

On approximately February 17, 2011, he met with non-party Ray Brennan and Defendant Anthony Parilla, an MTA general superintendent, and informed them that he had received medical authorization to resume his duties and requested leave to return to work. (Id.) On or about February 18, 2011, Parilla informed Plaintiff that the MTA viewed him as having been "absent without leave" during the period of his treatment. (Id.) Plaintiff was directed to receive a medical examination, but his attempts to comply were hindered by delays in obtaining medical paperwork. (Id. at 5-6.) According to Plaintiff, he was removed from his employment on March 16, 2011, by Defendant Raymond Silvery, an Assistant Manager at the MTA. (Id. at 6.)

   2.  Denial of Unemployment Benefits and MTA Employment Applications

Following his termination, Plaintiff filed for unemployment insurance benefits. (Id.) Plaintiff states that the MTA opposed his application on the basis that he had voluntarily resigned his position, rendering him ineligible for unemployment benefits. (Id.) Plaintiff alleges that the New York State Department of Labor investigated his unemployment claims and the MTA's opposition and ultimately concluded that Plaintiff had not abandoned his position and so could receive unemployment benefits. (Id.)

In the months after his removal, Plaintiff "applied to numerous civil service positions with the MTA." (Id.) Plaintiff applied to be a bus chassis maintainer in August 2011 and claims that he was "ranked as the #1 eligible candidate on the list." (Id.) Despite this ranking, Plaintiff was not hired for the position. (Id.) Following his rejection, Plaintiff requested clarification as to why he was not selected, but Defendant Diane Ariano[2] refused to provide any information or allow him the opportunity for a hearing. (Id. at 6, 12.)

Plaintiff subsequently appeared for interviews with the MTA for positions as a provisional car inspector in April 2013, a train operator in July 2013, and a car inspector in July 2014, all without success. (Id. at 7-8.) Prior to the last of these interviews, Plaintiff states that he spoke with Defendant Marisoll Gomez, who he identifies as the Human Resources Director for the MTA. (Id. at 8.) Gomez heard Plaintiff's arguments as to why he should be considered for the position, and she advised Plaintiff to report for his interview. (Id.) Plaintiff completed the application process and, despite several attempts in the following weeks, was unable to obtain any substantial update from Gomez regarding the status of his application. (Id.) When Plaintiff finally reached Gomez, she informed him that "he would not be considered for any title within the MTA." (Id.)

In connection with his applications, Plaintiff asserts that he contacted non-party Mark D. Lebow, the Board Committee Chairperson for the New York City Transit Authority. (Id. at 7.) Apparently as a result of this contact, Plaintiff avers that he was informed that "there is

---

[2] Plaintiff does not state explicitly that he discussed his August 2011 application with Ariano, nor, for that matter, does he link Ariano directly to any of the allegations in the complaint. He does, however, state that his claims against Ariano are based on actions that began on December 1, 2011, and result from Ariano's denial of his request for an explanation as to why he was not hired despite his placement at "the very top of the eligibility list." (Compl. at 12.) The complaint does not detail any other applications by Plaintiff prior to December 1, 2011, and so, based on the dates and the overlap in the allegations, the court concludes the best reading of the complaint is that Plaintiff's allegation on this point is specific to Ariano.

3

'something' written in [his employment] file that is so egregious [as to] preclude[] Plaintiff from [obtaining] employment within the MTA." (Id.)

B. **Procedural History**

On November 30, 2015, Plaintiff filed the current action bringing causes of actions under 42 U.S.C. § 1983 for violations of his federal constitutional rights as well as a number of state-law-based claims. (Compl.) On the same day, Plaintiff moved to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a)(1). (Mot. to Proceed IFP (Dkt. 2).) The court granted Plaintiff's motion to proceed in forma pauperis, but dismissed several of the defendants named in the complaint for failure to state a claim on which relief may be granted sua sponte. (Aug. 31, 2016, Mem. & Order (Dkt. 5).) The remaining defendants subsequently moved to dismiss the complaint in its entirety on June 15, 2017. (Mot.)

II. **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants may move to dismiss a claim against them on the basis that that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint on such a motion, the court must accept as true all allegations of fact, and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Even where a claim is otherwise plausible, however, a defendant may move to dismiss based on an available affirmative defense, and the

4

court may grant the motion on that basis "if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Accordingly, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted). "However, even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" Jackson v. N.Y.S. Dep't of Labor, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Reading the Complaint in the light most favorable to the pro se Plaintiff, the court finds that Plaintiff brings two sets of federal-law-based claims: first, claims against all defendants under 42 U.S.C. § 1983 for violations of his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution; and second, claims against Gomez and Ariano for alleged violations of Title VII of the Civil Right Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.[3] Plaintiff also brings claims under New York law for violations of his due process and equal protection rights under Article I, Sections 6 and 11 (respectively) of the New York State constitution, breach of contract, and intentional infliction of emotional distress against all defendants, and for defamation against Silvery and Parilla.

---

[3] Plaintiff specifically alleges that Ariano and Gomez violated the Equal Employment Opportunity Act, which amended Title VII. See Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103.

5

A. **Federal-Law Claims**

The court first addresses Plaintiff's claims brought under federal law. Those claims are best viewed in two categories. First, Plaintiff brings claims against Silvery and Parilla for their actions in connection with his 2011 termination from his position with the MTA. Next, Plaintiff alleges that actions taken by Ariano and Gomez in connection with his later applications for employment with the MTA violated both his statutory and constitutional rights. The court examines these claims separately and concludes that each of Plaintiff's federal-law-based claims must be dismissed.

1. Federal-Law-Based Claims against Silvery and Parilla

Plaintiff first argues that actions taken by Silvery and Parilla violated his rights to due process and equal protection under the federal constitution. (Compl. at 11-12.) The basis for each of these claims is essentially the same: Plaintiff alleges that Silvery and Parilla fired Plaintiff without justification, knowing that his absence was attributable to medical need, and inserted into his employment file unspecified false statements justifying that termination. (Id.) In response, Defendants contend that Plaintiff's constitutional claims against Silvery and Parilla are barred by the applicable statue of limitations.

Section 1983 does not itself contain a statute of limitations, which is instead determined by reference to the "law of the State in which the cause of action arose." Wallace v. Kato, 549 U.S. 384, 388 (2007). In particular, courts look to the statutory period applicable to personal injury torts, which in New York is three years from the date of accrual. Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013); N.Y. C.P.L.R. § 214.

Unlike the statutory period, however, the question of when a cause of action under Section 1983 accrues is a question of federal law. Wallace, 549 U.S. at 388. Under the federal standard, a Section 1983 claim accrues when a "plaintiff knows or has reason to know of the

6

injury giving rise to the claim." Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citation omitted). This does not require the plaintiff's awareness of all consequences of an action, but only knowledge "that he is suffering from a wrong for which damages may be recovered in a civil action." Lawson v. Rochester City Sch. Dist. 446 F.App'x 327, 329 (2d Cir. 2011) (quoting Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir. 1994)).

Based on the foregoing, the court concludes that Plaintiff's constitutional claims against Parilla and Silvery are time-barred and must be dismissed. While the precise bases for his federal due process and equal protection claims against Parilla and Silvery are not entirely clear from the complaint, it is evident those claims stem from the termination of his employment and that he had knowledge of at least some part of the claimed "wrongs" at that time. The fact that other acts of which he was unaware—including the claimed misstatement in his employment file as to the basis for his termination—continue to cause harm to his employment prospects does not alter this accrual date.[4] See Smith v. City of New York, 130 F. Supp. 3d 819, 833 (S.D.N.Y. 2015) ("That [Plaintiff] later found out about a collateral consequence of that termination does not toll the running of the limitations period."). Accordingly, Plaintiff's federal constitutional claims directed at Parilla and Silvery accrued, at latest, on the date of his termination, March 16, 2011.[5] Plaintiff was clearly aware of the denial of his application giving rise to his claimed

---

[4] Plaintiff also claims generally that the MTA protested his eligibility for unemployment benefits based on its claim that he "abandoned" his employment (Compl. at 6), and appears to attribute this protest in part to Silvery (id. at 11). Plaintiff does not point to any specific participation by Silvery in opposing his application for unemployment benefits, however, and the allegation and claim appear to be based solely on Silvery's decision to fire Plaintiff. Assuming, arguendo, that this allegation is directed at Silvery, it is time-barred based on the same reasoning stated above.

[5] The court assumes without deciding that Plaintiff's claims against Parilla—which allege that Parilla contributed to Plaintiff's removal by declaring that Plaintiff was absent without leave—only crystalized into an actionable injury when Plaintiff was terminated, rather than on February 17, 2011, following the meeting between Plaintiff and Parilla.

constitutional injuries, and any enduring injury from that is not sufficient to extend the accrual period.

Accordingly, Plaintiff's constitutional claims against Silvery and Parilla must be dismissed.

### 2. Federal-Law-Based Claims against Ariano and Gomez

Plaintiff's second set of claims, brought against Ariano and Gomez, relate to his post-termination applications for employment with the MTA. As with Silvery and Parilla, Plaintiff brings claims against Gomez and Ariano under 42 U.S.C. § 1983 for claimed violations of his rights guaranteed by the United States Constitution. (Compl. at 12-13.) He further claims that each of those defendants violated Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act. (Id.) The court discusses Plaintiff's constitutional and statutory claims separately and, for the reasons that follow, concludes that both sets of claims must be dismissed.

#### a. *Constitutional Claims*

Plaintiff contends that actions taken by Ariano and Gomez in connection with his August 2011 and July 2014 employment applications, respectively, violated his federal constitutional rights to due process and equal protection. Plaintiff recites the same basis for his claims against each of those defendants: That they "deemed Plaintiff ineligible [for the position to which he applied,] refused to disclose the reason. . . . [and] denied [Plaintiff's] requests" for further explanation or a hearing. (Id. at 12 (Ariano), 13 (Gomez).)

##### i. Claims against Ariano

At the outset, the court finds that all of Plaintiff's constitutional claims against Ariano are untimely for the reasons discussed in the preceding section. Though the complaint is not entirely clear, it appears that all of Plaintiff's claims against Ariano are based on the rejection of his

8

August 2011 application and Ariano's refusal to meet with Plaintiff or explain the basis for that denial thereafter. (See supra note 2.) The cause of action thus accrued against her no later than December 1, 2011, the date on which the Plaintiff suggests Ariano rebuffed his request for a meeting. Milan, 808 F.3d at 963 (2d Cir. 2015) (holding that Section 1983 action accrues when "plaintiff knows or has reason to know of the injury giving rise to the claim" (internal quotation marks and citation omitted)). Those claims thus accrued more than three years before Plaintiff filed this action in November 2015 and so fall outside of the applicable statute of limitations. Hogan, 738 F.3d at 517.

ii. Claims against Gomez

Plaintiff's claims against Gomez are concededly timely, and so the court separately examines the merits of the claims against her, turning first to the due process claim. "In order to prevail on a [Section] 1983 claim for violation of the procedural due process rights[6] guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." Rehman v. State Univ. of N.Y. at Stony Brook, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001)). An interest is constitutionally protected where the claimant has a "legitimate claim of entitlement," a requirement which is not satisfied by "[a]n abstract need, desire, or unilateral expectation."

---

[6] Claims under the Due Process Clause of the Fourteenth Amendment may also seek redress for violations of a plaintiff's substantive due process rights. "To prevail on a claim alleging a violation of substantive due process, a claimant must establish that the government conduct at issue was 'so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" Sutera v. Transp. Sec. Admin., 708 F. Supp. 2d 304, 314 (E.D.N.Y. 2010) (citing Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)). In the court's reading, Plaintiff raises only a procedural due process claim against Gomez, arguing that she refused to elaborate on the basis for the MTA's decision not to hire Plaintiff or provide him with a hearing (Compl. at 13), and so the court does not separately address any potential substantive due process arguments that could be raised.

Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002) (internal quotation marks and citations omitted).

Public employment may give rise to a protected property interest, but only where the claimant can establish that his expectation in that employment "stem[med] from an independent source such as a state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 629 (2d Cir. 1996) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Likewise, a state employer's adverse employment action may implicate an individual's protected liberty interests, but only where "[s]pecial aggravating circumstances" are present. Id. Such claims are most commonly assessed under the rubric of the "stigma-plus" test, which requires a claimant to allege "(1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (internal quotation marks and citation omitted). In order to be actionable, the statement must be "sufficiently public to create or threaten a stigma." Id. Following the same reasoning, an individual's liberty interests may be implicated on this basis where an adverse employment action is "given a public airing which impaired the prospects of the employee for other employment." Abramson, 278 F.3d at 101; cf. also Donato, 96 F.3d at 630 ("The test of whether a state employer's decision not to rehire an employee denied that employee due process is met when it deprives her of the freedom to take advantage of other employment opportunities." (internal quotation marks and citations omitted)).

Examining the allegations in the complaint, the court finds no basis to conclude that Gomez deprived Plaintiff of any constitutionally protected property or liberty interest. Plaintiff

10

points to no law, contract, policy, rule, or other external source that would justify his expectation of potential employment with the MTA and, absent such an "independent source," there is no basis for asserting a property right in such employment. See Donato, 96 F.3d at 629. Likewise, Plaintiff fails to allege that Gomez took any action that would deprive him of a protected liberty interest. At most, his allegations support an inference that Gomez passively received and acted on defamatory statements made by others. There is no allegation that Gomez herself made or published any derogatory statements about Plaintiff or his employability or took actions that would damage Plaintiff's potential to obtain employment in the eyes of other prospective employers.[7] See, e.g., McDonald v. Bd. of Educ. of City of N.Y., No. 01-CV-1991 (NRB), 2001 WL 840254, at *7-8 (S.D.N.Y. July 25, 2001); Walker v. Daines, No. 08-CV-4861 (JG) (LB), 2009 WL 2182387, at *10 (E.D.N.Y. July 21, 2009). Accordingly, as there is no protected interest at issue, Plaintiff's due process claim against Gomez fails.

Plaintiff's equal protection clause claims are likewise insufficient to merit relief. "The Equal Protection Clause requires that the Government treat all similarly situated people alike." Gentile v. Nulty, 769 F. Supp. 2d 573, 577-78 (S.D.N.Y. 2011). "To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than

---

[7] The court notes that, under the Second Circuit's decision in Velez v. Levy, a "stigma-plus" action may be maintained where one party makes the allegedly injurious statement about a plaintiff and a separate individual terminates the plaintiff's employment, so long as the latter individual implicitly adopted the defamatory statement in a way that would allow a "reasonable observer" to determine the statement and the adverse employment action were connected. 401 F.3d at 89. Even assuming that Gomez implicitly adopted the allegedly derogatory information in Plaintiff's file, however, Plaintiff's claim would fail, as merely internal adoption of a statement without public stigma does not support a claim of deprivation of a liberty interest in employment. See Donato, 96 F.3d at 631 ("[S]tigmatizing statements by the government about a discharge only implicate a liberty interest when there is also public disclosure."); McDonald v. Bd. of Educ. of City of N.Y., No. 01-CV-1991 (NRB), 2001 WL 840254, at *7-8 (S.D.N.Y. July 25, 2001) (holding that Board of Education's purely internal dissemination of information that hampered plaintiff's ability to obtain employment with that agency did not satisfy publication requirement). Moreover, the Second Circuit has stated that, in order to be actionable, there must be a close temporal proximity between the alleged stigmatizing statement and the adverse employment action. The multi-year gap between the underlying statements and Gomez's actions thus provides a separate reason not to apply this bifurcated stigma theory to Gomez. Cf. Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004) ("[P]laintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment.").

others similarly situated as a result of intentional or purposeful discrimination." Barnes v. Ross, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (quoting Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005)). Here, Plaintiff has not made any allegation that Gomez treated him differently than any other person, similarly situated or otherwise. Instead, he simply argues that Gomez harmed him when she deemed him ineligible for employment with the MTA and declined to explain her rationale for that decision. Even reading the complaint in the light most favorable to Plaintiff, his claim that Gomez violated his rights under the Equal Protection Clause is thus unsupportable and must be dismissed.

       b.   *Equal Employment Opportunity Act Claims*

As noted, Plaintiff also brings claims against both Ariano and Gomez for alleged violations of Title VII of the Civil Rights Act, as amended by the Equal Employment Opportunity Act. 42 U.S.C. §§ 2000e et seq. These claims are facially insufficient: "[I]ndividual defendants may not be held personally liable for violations of [that] statute." Fanelli v. New York, 51 F. Supp. 3d 219, 226-27 (E.D.N.Y. 2014) (collecting cases). The claims against Ariano and Gomez must be dismissed accordingly.

**B.**   **Supplemental Jurisdiction**

Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over the remaining state-law claims.

Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims. See 42 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it had original jurisdiction . . . ."). "[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Klein & Co.

12

Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006). Determination of whether to exercise such jurisdiction is guided by the "Cohill factors" of judicial economy, convenience, fairness, and comity. Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Here, these factors favor the decision to decline to exercise supplemental jurisdiction. First, there is no gain in judicial economy to be achieved by retaining the claims, as the court's involvement with the case to this point has been limited to two opinions, issued nearly two years apart, addressing only dismissal of claims based on the pleadings. See Chenensky v. N.Y. Life Ins. Co., 942 F. Supp. 2d 388, 392-93 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over five-year-old case in which the court decided two dispositive motions). Likewise, declining to exercise supplemental jurisdiction would not inconvenience the parties or unfairly disadvantage any of them: The litigation remains in its early stages, with no discovery yet conducted, and all of the parties either reside or are employed in New York. (Compl. at 3.) It would therefore not be difficult to refile and defend the case in state court. Finally, "given that only state-law issues remain in this case, comity dictates that the [c]ourt decline to decide those disputes." Jackson v. Barden, No. 12-CV-1069 (KPF), 2018 WL 340014, at *21 (S.D.N.Y. Jan. 8, 2018).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 26) is GRANTED. Plaintiff's time-barred federal-law claims against Defendants Silvery and Parilla, time-barred federal constitutional claims against Defendant Ariano, and Title VII claims against Defendants Ariano and Gomez are DISMISSED WITH PREJUDICE, as any attempt to amend these claims would be futile. Plaintiff's federal constitutional claims against Defendant Gomez are

DISMISSED WITHOUT PREJUDICE. The court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, which are also DISMISSED WITHOUT PREJUDICE.

The Clerk of Court is respectfully DIRECTED to enter judgment accordingly and to mail a copy of this order to pro se Plaintiff Michael J. Kneitel.

SO ORDERED.

Dated: Brooklyn, New York
January 19, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge